IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BARTESIAN INC., a Canadian corporation,<br><br>    *Plaintiff,*<br>v.<br><br>NIFTY HOME PRODUCTS INC., a Minnesota corporation<br><br>    *Defendant.* | Case No. 21-cv-2428 |

## COMPLAINT FOR TRADEMARK INFRINGEMENT

Plaintiff Bartesian, Inc. ("Bartesian"), for its complaint for trademark infringement against Defendant, Nifty Home Products, Inc. ("Nifty" or "Defendant") alleges as follows:

### NATURE OF ACTION

1. This is an action for trademark infringement, unfair competition, and dilution in violation of the Lanham Act (15 U.S.C. §§ 1114(1), 1125(a) and 1125(c)), the Illinois Uniform Deceptive Trade Practices Act (815 ILCS §§ 510/1, *et seq*.), and Illinois common law.

### PARTIES

2. Bartesian is a foreign corporation organized under the laws of Canada, with its principal place of business at 303 W Erie St #320, Chicago, IL 60654.

3. Nifty is a Minnesota corporation, with its principal place of business at 920 Walnut Avenue, Madison Lake, Minnesota 56063.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and supplemental jurisdiction over Bartesian's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant transacts business in this District and a substantial part of the events or omissions giving rise to Bartesian's claims occurred in this District. And because Bartesian is headquartered in Chicago, its loss of reputation, goodwill, and economic harm are all suffered in this District.

6. Upon information and belief, Defendant regularly conducts or solicits business in the state of Illinois and derives revenue from goods or services used or consumed in this state, including via its website accessible in Illinois at https://www.niftyhomeproducts.net ("Defendant's Website"). Consumers located in Illinois can directly order goods from Defendant's Website.

7. Defendant's business activities that are the subject of this action are within the flow of, and have affected, interstate trade and commerce. Defendant receives revenue through orders placed by consumers on Defendant's Website including, upon information and belief, persons located in Illinois.

8. This Court has personal jurisdiction over Defendant because it has purposefully availed itself of Illinois by (i) offering for sale its goods to Illinois customers via Defendant's Website and (ii) harming Bartesian in Illinois. Defendant is therefore subject to personal jurisdiction in Illinois under 735 ILCS 5/2-209(a)(1), (2), (7) and 735 ILCS 5/2-209(c).

## FACTS

**Background on Bartesian**

9. Founded in 2014, Bartesian is the creator and producer of the wildly popular capsule-based, cocktail-on-demand machine that allows consumers to make authentic, high-quality cocktails in their own home.

10. Designed to take the guesswork out of measuring ingredients and eliminating the need for consumers to purchase complex ingredients, Bartesian's cocktail machine currently offers

more than 40 different high-quality, ready-to-drink cocktail options. Consumers simply place a Bartesian capsule of their choosing into their Bartesian machine and use their own spirits to customize the strength of their on demand cocktail. Bartesian's machine uses recyclable flavor capsules that contain real juices, natural extracts, and bitters with no artificial colors or flavors.

11. Bartesian's cocktail machine was first introduced as a concept in 2014 on a Kickstarter campaign, where it raised a $250,000 investment.

12. Bartesian's cocktail machines and capsules have since became readily available across most major retailers, achieving millions in monthly revenue.

13. Recently, Bartesian raised approximately $20 million through a Series A round, which closed on April 6, 2021.

14. Bartesian has served over 5 million cocktails to date and has grown its subscriber base over 3000% in the last year alone.

15. Bartesian's popularity has skyrocketed in large part due to consumers' eagerness to share the product on social media platforms, particularly as consumers are increasingly looking for accessible, bar-quality cocktails available from the comfort of their own homes.

16. In its rise to popularity, Bartesian has garnered numerous industry awards and consumer accolades, including: the 2020 CES Innovation Award, The Knot Registry Award, the Good Housekeeping Best Innovation of 2020 Award, and was selected as one of Oprah's Favorite Things of 2019. Bartesian has also received over 3,500 reviews on Amazon (averaging a 4.7 star rating) and was so popular that it was completely sold out of for much of 2020.

17. Most recently, Bartesian announced that actress Mila Kunis has joined Bartesian's board of advisors to provide guidance on brand strategy and growth.

18. Bartesian shows no signs of slowing down and is using its capital to accelerate its growth by scaling production to keep up with the ever-increasing demand as well as to expand its offerings.

19. As Keith Kravcik, Chief Financial and Chief Investment Officer of Cleveland Avenue, LLC—the privately held venture capital firm that led Bartesian's Series A—put it, "Bartesian's innovative approach to high-quality cocktails is clearly resonating with consumers, tapping into the growing interest in premium beverages, and we believe the company is poised to continue its market-leading position for years to come." Mr. Kravcik projects that the global market size for ready-to-drink cocktails is currently valued at over $1.6 billion.

**The Bartesian Trademark**

20. Bartesian has been using the "BARTESIAN" name in association with its cocktail machine and capsules in United States commerce since as least as early as August, 2014.

21. On June 15, 2015, Bartesian submitted a trademark application for BARTESIAN in Canada (Application No. 1732804).

22. On September 15, 2015, the Canadian Intellectual Property Office granted Bartesian a registration for its BARTESIAN trademark (Registration No. TMA980715) (the "Bartesian Canadian Registration").

23. On October 27, 2015, Bartesian submitted an application for a trademark registration with the United States Patent and Trademark Office ("USPTO") for BARTESIAN based on its Bartesian Canadian Registration, under section 44(d) of the Trademark Act, 15 U.S.C. §1126(d) (Serial No. 86800779).

24. On January 16, 2018, the USPTO issued to Bartesian U.S. Trademark Registration No. 5377559 for the mark BARTESIAN in class 007 for "aerated beverage making machines for

making alcoholic and non-alcoholic beverages; non-aerated beverage making machines for making alcoholic and non-alcoholic beverages" and in class 032 for "Syrups for use in making beverages sold in single serving cartridge capsules" with a priority date of June 15, 2015 (the "Bartesian US Registration"). A true and accurate copy of the Bartesian US Registration is attached hereto as Exhibit A.

25. Accordingly, Bartesian has valid and enforceable rights in the United States as to its BARTESIAN Mark since June 15, 2015 in connection with its cocktail machines and capsules (the "BARTESIAN Mark").

**Defendant Nifty's Business and Infringing Actions**

26. Upon information and belief, Defendant Nifty was incorporated in January 1991.

27. According to Defendant's Website, Nifty offers for sale a variety of products that are designed to provide consumers with "Nifty" solutions to everyday challenges that are unique, innovative, and affordable.

28. Of the products available for sale on Defendant's Website are "Coffee Pod & Tea Storage", "Bakeware Accessories", "Cosmetic Organizers", "Specialty Items", and "Cocktail Capsule Storage."

29. When a consumer clicks on the "Cocktail Capsule Storage" section of Defendant's Website, they are able to pick from the "Cocktail Capsule Carousel for Bartesian®" or the "Cocktail Capsule Drawer for Bartesian®."

30. Bartesian has never approved, sponsored, or otherwise consented to Nifty using the BARTESIAN Mark.



31. Accordingly, Bartesian was surprised to learn that Nifty was using the BARTESIAN Mark in connection with offering cocktail capsule carousels or capsule drawers (the "Infringing Products").

32. On or about March 18, 2020, Bartesian, through prior counsel, sent Nifty its first cease and desist letter, demanding Nifty remove the BARTESIAN Mark from its Infringing Products, specifically on its Amazon listings.

33. On April 7, 2020, counsel for Nifty informed prior counsel for Bartesian that it had revised the Amazon product listing, and went so far as to say that "Bartesian is not used on the product, product packaging, and instructional materials that are distributed with the product."

34. While Nifty claimed it had removed the BARTESIAN Mark from its Amazon product listings, it did not cease and desist using the BARTESIAN Mark altogether.

35. In fact, upon information and belief, its use of the BARTESIAN Mark expanded.

36. Accordingly, in November, 2020 Bartesian, through counsel, sent a new cease and desist demand, in part explicitly demanding Nifty remove the BARTESIAN Mark from Defendant's Website for use in connection with the sale of its Infringing Products.

37. Bartesian requested that Nifty take appropriate efforts to appropriately and lawfully mitigate confusion, including but not limited to amending the product listings of the Infringing Products on the Defendant's Website to no longer imply or suggest a relationship between Bartesian and Nifty.

38. While the parties exchanged correspondence as to the matter, at no time did Nifty remove the BARTESIAN Mark from its product listings, refused to incorporate changes to clearly establish there is no connection between Bartesian and the Infringing Products, and opted instead only to make minor grammatical changes that do nothing to obviate confusion. Current screen captures of The Infringing Product listings on the Defendants' Website follow:



39. Specifically, Bartesian requested that Nifty remove the BARTESIAN Mark from the product titles on the Defendant's Website, as the inclusion of the BARTESIAN Mark in the product titles is well beyond what is necessary to inform a consumer that the Infringing Products are simply compatible with Bartesian products.

{9577855: } 8

40. As seen above, the Defendant's Website displays the BARTESIAN Mark in a large font in the Infringing Product listing titles, and is not used in conjunction with the name Nifty.

41. Despite the fact Bartesian reasonably requested the Infringing Product titles be changed to "Nifty Cocktail Capsule Drawer" and "Nifty Cocktail Capsule Carousel", Nifty has refused to remove the BARTESIAN Mark from the Infringing Product titles, and has additionally refused to add its own mark in the title.

42. Such an omission of Nifty's own mark, in conjunction with the focus being on the BARTESIAN Mark, is done in a manner to conceal the fact that Nifty's Infringing Products are simply compatible with Bartesian products, and no connection beyond that exists.

43. The Infringing Product titles use the BARTESIAN Mark in a manner to intentionally deceive consumers into purchasing these products because they create a false affiliation or with Bartesian.

44. Furthermore, the product descriptions of the Infringing Products are intentionally drafted to conceal the fact that Nifty is the producer of these products, and that such products are simply compatible with Bartesian products.

45. For example, Bartesian requested that Nifty rephrase the verbiage to inform consumers the products were "compatible for use with Bartesian capsules" yet Nifty again refused to explicitly identify the purpose of including the name 'Bartesian' in a manner which does no more than inform consumers of compatibility. Notably, both product listings reference "cocktail capsules" but fail to refer to such capsules as goods provided under the BARTESIAN Mark. Instead, Nifty has strategically referenced the BARTESIAN Mark without the word "compatible", and only as a way to identify the Infringing Products themselves, as a way to deceive consumers into believing these products are sponsored by, endorsed by, or offered for sale by Bartesian.

46. Nifty has also refused to add in any disclaimer language on Defendant's Website which would inform consumers that the BARTESIAN Mark is a registered mark of Bartesian, and any use of the BARTESIAN Mark in connection with Nifty's products does not imply any affiliation or endorsements, and that Nifty is not associated with or sponsored by Bartesian.

47. Nifty has even gone so far as to strategically include the '®' next to the BARTESIAN Mark.

48. After Bartesian pointed this out, Nifty's explanation was that it included the ® as a way to demonstrate its usage was permissible. Besides the fact such a position is a legal fallacy, the fact that Nifty still refuses to include a disclaimer which directly informs consumers that the BARTESIAN Mark ® is a registered trademark of Bartesian, Inc. and use on the Defendant's Website does not imply any affiliation or endorsement unambiguously suggests that the inclusion of the ® absent any disclaimer is done to draw consumer's attention to the BARTESIAN Mark in a confusing manner.

49. While including such a disclaimer may not obviate confusion on its own, the inclusion of such would plainly inform consumers that no affiliation exists. As such, there exists no reasonable explanation as to why Nifty has intentionally refused to include a disclaimer on the Defendant's Website, except for the fact that it does not want such confusion to be obviated.

50. Nifty's deliberate choices to minimize unnecessary use of the BARTESIAN Mark on the Defendant's Website, omit its own mark in connection with the Infringing Products, specifically refer to the fact that the Infringing Products are no more than compatible, and its omission of a disclaimer that would otherwise inform consumers no affiliation exists are all intentionally done to trade off the goodwill of the BARTESIAN Mark and done in an effort to

confuse consumers into believing the Infringing Products are sponsored by, affiliated with, or otherwise endorsed by Bartesian.

51. As of the time of filing, Defendant's Website still lists the BARTESIAN Mark in connection with the Infringing Products, does not reference Nifty in the product listing titles, and the URLs mention Bartesian as well.

52. Furthermore, Nifty's packaging *does* include the BARTESIAN Mark[1], despite Nifty denying this.



53. Nifty's use of the BARTESIAN Mark is identical to and confusingly similar to Bartesian's BARTESIAN Mark in appearance, sound, meaning, and commercial impression and Nifty's use of the BARTESIAN Mark is designed to cause confusion, mistake, or deception.

---

[1] The BARTESIAN Mark is misspelled on the packaging, but Bartesian maintains the misspelling does not obviate the similarities and overall similar commercial impression.

54. Nifty's use of the BARTESIAN Mark trades off of the goodwill of Bartesian's BARTESIAN Mark, and is without permission or license from Bartesian.

55. Nifty has been on constructive notice of the BARTESIAN Mark by virtue of the Bartesian US Registration, which Nifty acknowledges its knowledge of through improperly using the ® in connection with the BARTESIAN Mark on its Infringing Products.

56. Nifty has also been on actual notice of its infringing activity since at least March 2020.

57. On information and belief, the relevant consumer public has experienced and continues to experience actual confusion about the connection or association between the BARTESIAN Mark and Nifty's Infringing Products.

58. Bartesian's success has established significant goodwill and recognition with the BARTESIAN Mark, including the Bartesian US Registration.

59. As a result, the BARTESIAN Mark has acquired great value as a specific identifier of Bartesian's goods and services, and serves to distinguish Bartesian from that of others. Bartesian's goods and services have become associated with the BARTESIAN Mark in the minds of consumers, and gives Bartesian strong, valid and enforceable trademark rights in the BARTESIAN Mark.

60. That consumers have been confused into believing that Nifty's Infringing Products are affiliated with, sponsored by, or otherwise related to Bartesian threatens to damage that goodwill, as Bartesian has no control over the quality of the goods and services provided by Nifty, and most important, did not consent to such unlawful use.

61. Nifty's use of the BARTESIAN/BARTISIAN name is highly similar in appearance and in sound to the BARTESIAN Mark, is used in connection with related goods and services, and targets the same customers through the same channels of trade.

62. Nifty's use of the BARTESIAN/BARTISIAN name causes a likelihood of confusion and false sense of affiliation, endorsement, and/or sponsorship with its Infringing Products and Bartesian.

63. Without permission or authority from Bartesian, Nifty has infringed the BARTESIAN Mark, including the Bartesian US Registration in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell Nifty's products and services under the mark BARTESIAN/BARTISIAN.

64. In addition, despite Nifty being well-aware of Bartesian's existence and prior rights in and to the BARTESIAN Mark, possessing actual notice of Bartesian's rights in and to the Bartesian US Registration and with actual knowledge that their use of the BARTESIAN Mark is neither consented to nor authorized by Bartesian, Nifty continues to use the BARTESIAN Mark on its Infringing Products, both on the Defendant's Website and on its product packaging, mistakenly believing that they can flout the law with impunity.

65. Nifty's unauthorized uses of the BARTESIAN Mark complained of herein are willful and deliberate and done with an intent to trade upon the fame and goodwill represented by the BARTESIAN Mark, to improperly suggest or imply the existence of an affiliation or license between Nifty and Bartesian, to dilute the distinctiveness of the BARTESIAN Mark, and to mislead and confuse actual and potential consumers

66. Nifty's acts complained of herein have caused damage to Bartesian in an amount to be determined at trial, and such damages will continue to increase unless Nifty is enjoined from its wrongful actions and infringements.

## COUNT I
### Federal Trademark Infringement
### 15 U.S.C. § 1114

67. Bartesian realleges and incorporates by reference paragraphs 1-66 as though fully stated herein.

68. Bartesian is the owner of the Bartesian US Registration for the distinctive BARTESIAN trademark in classes 007 and 032.

69. Nifty has no right, authority, or permission to use the BARTESIAN Mark.

70. Defendant's aforesaid unauthorized uses of the BARTESIAN Mark are likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendant's goods and services and falsely and deceptively represents Defendant's goods and services as being sponsored by, authorized by, or provided by Bartesian, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

71. Defendant committed its wrongful actions with the intent to mislead and misdirect consumers.

72. Bartesian has incurred and continues to incur monetary damage, Defendant has realized and continues to realize profits from such infringement, and Defendant's actions of infringement have been willful and intentional.

73. This is an exceptional case and Bartesian is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

74. Bartesian is being damaged by this conduct and is without an adequate remedy at law to compensate it for Defendants' wrongful acts.

## COUNT II
### Federal Unfair Competition/False Designation of Origin
### 15 U.S.C. § 1125(a)

75. Bartesian realleges and incorporates by reference paragraphs 1-74 as though fully stated herein.

76. Defendant's aforesaid unauthorized uses of the BARTESIAN Mark falsely suggest that it is associated with Bartesian in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77. Defendant's aforesaid unauthorized uses of the BARTESIAN Mark, including but not limited to on the Defendant's Website and in connection with the sale of products, cause consumers to think that Defendant is affiliated with or sponsored by Bartesian in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78. Bartesian is being damaged by this conduct and is without an adequate remedy at law to compensate it for Defendant's wrongful acts.

## COUNT III
### Federal Trademark Dilution
### 15 U.S.C. § 1125(c)

79. Bartesian realleges and incorporates by reference paragraphs 1-78 as though fully stated herein.

80. Defendant's aforesaid unauthorized uses of the BARTESIAN Mark dilute the distinctive quality of the famous BARTESIAN Mark, and Defendant has willfully intended to trade on Bartesian's reputation and goodwill and to dilute the distinctiveness of the BARTESIAN Mark, all in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

81. Nifty's use of the BARTESIAN Mark impairs the distinctiveness of the BARTESIAN Mark and thereby lessens the capacity to identify and distinguish Bartesian.

82. Bartesian is being damaged by this conduct and is without an adequate remedy at law to compensate it for Defendant's wrongful acts.

## COUNT IV
### Deceptive Trade Practices
### Pursuant to 815 ILCS §§ 510/1, et seq.

83. Bartesian realleges and incorporates by reference paragraphs 1-82 as though fully stated herein.

84. Defendant's aforesaid unauthorized uses of the BARTESIAN Mark constitutes knowing and willful engagement in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.* by causing likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products or services; causing likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of Defendant or their products with Bartesian; and using deceptive representations or designations of origin in connection with Defendant's products.

85. The unauthorized use by Defendant of the BARTESIAN Mark is causing and is likely to cause substantial injury to the public and to Bartesian and Bartesian has no adequate remedy at law for this injury.

86. Bartesian is entitled to injunctive relief and to an award of its costs and attorney's fees under 815 ILCS § 510/3.

## COUNT V
### Common Law Unfair Competition

87. Bartesian realleges and incorporates by reference paragraphs 1-86 as though fully stated herein.

88. Defendant's aforesaid unauthorized uses of the BARTESIAN Mark constitute common law trademark infringement in violation of the common law of the various states, including the state of Illinois.

89. Defendant's conduct is willful, deliberate, intentional, and in bad faith.

90. Defendant's acts are greatly and irreparably damaging to Bartesian and will continue to damage Bartesian unless enjoined by the Court such that Bartesian has no adequate remedy at law for this injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bartesian asks this Court to enter judgment in its favor against Defendant Nifty as follows:

A. Enter judgment that Defendant has violated the Lanham Act, 15 U.S.C. §§ 1114, 1125; 815 ILCS §§ 510/1, *et seq*., and Illinois common law, and that such violations were willful and intentional, making this an exceptional case;

B. For a permanent injunction restraining Defendant from the unlawful, unfair, fraudulent, deceptive and misleading acts and conduct set forth above, and enjoining Defendant from using any mark, slogan, trade name, business name or other device that infringes (i.e., is confusingly similar to) the BARTESIAN Mark for any purpose—including, but not limited to, for use in connection with any products via its website and/or on product packaging;

C. For an order directing Defendant to file with this Court and serve on Bartesian within three (3) days after service of an injunction a written report under oath setting forth in detail the manner and form in which Defendant has complied with the injunction pursuant to 15 U.S.C. § 1116;

D. For an order requiring Defendant and all those in privity with it to surrender for destruction all materials incorporating or reproducing Bartesian's BARTESIAN Mark pursuant to 15 U.S.C. § 1118;

E. For an accounting of the gains and profits realized by Defendant from its wrongful acts of false designation of origin, infringement, and dilution, and recovery of all actual damages suffered and sustained by Bartesian as a result of Defendant's aforesaid wrongful acts, as well as payment for the costs of this action and prejudgment interest, pursuant to 15 U.S.C. § 1117;

F. For statutory damages, actual damages and increased and punitive damages as allowed by the law—including, but not limited to, those increased damages authorized by 15 U.S.C. § 1117;

G. For Bartesian's costs and expenses, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and prejudgment interest at the maximum legal rate; and

H. For such other and further relief as may be just and equitable.

## JURY DEMAND

Plaintiff Bartesian Inc. hereby demands and requests a trial by jury on all issues so triable.

Dated: May 5, 2021

Respectfully submitted,

**BARTESIAN, INC.**

By: /s/ Nicholas Kurk
One of their attorneys

Nicholas A. Kurk (Bar No. 6292133)
Stephen J. Rosenfeld (Bar No. 6216769)
Donielle F. Robinson (Bar No. 6321391)

MCDONALD HOPKINS LLC

300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 642-6103
nkurk@mcdonaldhopkins.com
srosenfeld@mcdonaldhopkins.com
drobinson@mcdonaldhopkins.com

*Attorneys for Plaintiff Bartesian Inc.*